We'll move to the seventh case of the day, U.S. v. Schneider. May it please the court, counsel. I wasn't quite ready back there for that. Good morning, Your Honor. It doesn't happen very often. It does not happen very often. So, Ms. Christensen. My name is Joanna Christensen. I represent the appellant, Darrell Schneider, in this matter. The issue before the court is the factual basis and understanding of Mr. Schneider of his guilty plea. This was a complex case that occurred basically over the course of a year in the Eastern District of Wisconsin, beginning with Ms.'s allegations that her father had sexually molested her in late April of 2011. There was a criminal complaint filed, then an indictment, then an information. He pled guilty, and then there was a second information file. In this very strange course of events, it's not unusual to us as attorneys to see things like this change from charge to charge, from statute to statute, to statutory maximum to statutory maximum. It doesn't happen often, but it does happen. But when you're talking about a layperson, Mr. Schneider has some college education, but was an over-the-road truck driver who had never been in federal court. Well, he had been in federal court before for a misdemeanor, but mostly in tribal court. It was difficult for him to comprehend exactly what was going on in this complex situation. The complaint alleged abuse of sexual contact and sexual abuse of a minor. The indictment, two counts of sexual abuse. The first information, sexual abuse of a minor. We're back to that. The second information, the abuse of sexual contact. When we're talking to laypeople, those all sound like the exact same crime. If I were to try to explain this to someone who's not involved in criminal defense or prosecution, they would say, well, it all sounds like the same thing to me. What are the differences? Well, the differences, of course, are in the statute, and we as lawyers know that the differences are very fine and technical. The problem is they were not explained well to Mr. Schneider, and he certainly was confused at the change of plea hearing and then afterwards as well. The differences really boil down to the difference between sexual act and sexual contact. So MS has always maintained that it was penis to buttocks contact. Her testimony, although she's recanted that statement, when she's unrecanted the recanting, she still said that 2011 incident was buttocks contact. She never said anus. The government suggests that perhaps that she doesn't know the difference between anus and buttocks, and I believe she was 14 or 15 at the time of the offense, and that's certainly plausible, but that's too far of an inference or a reading. When someone says buttocks, particularly when it's in one statute and not the other, I don't believe we can infer that she meant anus. Anus and buttocks are obviously two different parts of the body. They're two different parts of the statute. While anus is in both, buttocks is only in the sexual contact statute. The problem then becomes that at the change of plea hearing, the information that was filed originally said vulva, which of course is completely different than either buttocks or anus. The district court goes through the colloquy with the defendant at the beginning and then toward the end says, wait a minute, is this right? Because there seems to be some difference between the factual basis in the plea and the information.  And then in the plea agreement from vulva to buttocks, because it reflects her testimony or her statement, and then to anus. As the government says, because anus is a more technical term for buttocks, which of course it's not, as cited in our reply brief, they're defined in common language as very different things. It's confusing, of course, to us. It was confusing for me to write the brief and make it, explain it to other lawyers, but to explain it to someone like Mr. Schneider, it's clear he had a misunderstanding. He has maintained that he pled guilty to sexual misconduct. Now, of course, that's not a charge. As I read off the names of the statute, that's not one of the available names. But the new plea agreement, I mean the second plea agreement, technically it was the third. Yeah, that was the third. Yeah, that's what I was saying, the latest. The last. The last plea agreement. The District Court didn't accept that charge. Just remind me, because it's hard to keep all these. Yeah, and actually, Your Honor, I have a chart because it's very hard to keep it intact. The very last one was abusive sexual contact, which is 2244A. So we're dealing with 2242, which is the most serious. 2243, which is the middle ground, which the change of plea hearing was about. That last information, the last plea agreement, was 2244. That was the least serious. That's the least serious. That's got the statutory maximum of three years. So when he's talking about misconduct, you know, contact, conduct, three years, he's not a sophisticated person. So it makes sense that this is what he was thinking he was pleading guilty to. It also makes sense because it had been discussed before. It was in the criminal complaint that that charge was in the criminal complaint. That was one of the charges against him. I'm sorry, I'm wrong about that. Oh, no, it was. It was the first count in the criminal complaint. And it was completely reasonable for him to assume that that's what he was going to receive, was a sentence of three years, capped. Then, of course, when he gets the pre-sentence report back, and it's much higher than that, he's confused. And we do see some defendants who get the pre-sentence report back and say, oh, that's too much time. I want to withdraw my plea. But what he really says is, I thought I could only get three years. I thought that that was going to be my cap. And in this case, he testified to it at the motion hearing on his motion to withdraw. In the middle of all this, of course, the parties somehow agree on this second information and second plea agreement to this lesser charge that he thought he was pleading guilty to. And the only explanation for someone who wasn't there, because I was not there, is that the parties agreed that that was the most appropriate resolution of this case at this point. The district court didn't believe that, didn't think that it should be the resolution of the case, and refused to accept that plea agreement and information. In all honesty, I don't know that the district court could have, at that point, accepted a second information and a second guilty plea without vacating the first. So procedurally, it's certainly a difficult case. Factually, we question whether there's a factual basis as well, because of MS's statement that never wavered when she made the statement that the conduct occurred. That that 2011 assault was penis-to-buttocks contact, and never wavered from that, unless she was a close recantant. The government argues that this is plain error review. I think it's a very difficult case, because while it was not, I say I'm in my rebuttal time, I'll finish my thought. While it was not something that was argued by the attorneys, it was stated many times by Mr. Schneider that he didn't understand, that he thought he was pleading guilty to an offense that had three-year cap. So unless the court has further questions, I'll reserve the rest of my time for rebuttal. That's fine. And I would say, because I had to do a chart, too, to try to figure this out and graph it, it's nothing in our rules that prohibits you from providing such a chart to the court, as long as it's fair. Yeah, I certainly can afterwards. No, no, no, no. I'm just saying you can teach a briefing. It's very helpful. You know, I have done it in other cases. It's kind of an office joke that I make charts. I happen to make this after briefing, more for my oral argument. I understand. But I will keep that in mind. Thank you. All right. Thank you. Mr. Roach. May it please the Court, good morning. Still morning. My name is William Roach, and I'm the AUSA that handled this case in front of the district court. I must say, I find this kind of perplexing, you know, when the parties realize all this confusion is going on. You come up with a plea agreement that each side agrees to and, you know, adheres to the statement that he has continually made in terms of where the contact occurred, that this would get rejected by the court. Let me answer that very briefly and directly. That final plea agreement was offered solely, at least from the government standpoint, because of the recantation, in effect. It had nothing at all to do with the facts. It had everything to do with the recantation. And I believe I even stated that on the record at the hearing when the parties proposed this to the court. The facts were always clear and in support of the charge that was the foundation for the plea agreement, the sexual act offense. From the defense perspective, I would argue that three-year offense certainly was something of interest to them because it avoided the defendant facing more serious charges. But from the government's perspective, it was all about the problems that occurred from the recantation. And I would point out that all of that stems from the defendant's contacts to his daughter via the phone, attempting to get her to recant. So it had nothing to do at all with the factual basis at all. I concede that there were a number of variations of charges through the course of that, but I think what's critical here is that the court look solely at the plea transcript here, what the district court did as far as the charge at hand. There were some charges that predated it, no doubt about it, but the charge that got the most focus and needed the most focus was the sexual act offense that was the charge that the district court ultimately accepted. And if you look at that plea transcript here, the judge was very clear with respect to the defendant as to what the elements of the offense were. The plea agreement maintained that this was a sexual act offense. It accurately described the elements of the offense, including the need to have penis-to-anus contact for this offense to occur. The factual basis was amended. It initially said buttocks, but using the words of the victim. I attached the plea agreement to my draft here. The specific phrase that proves the factual basis here, MS could feel that Schneider was attempting to place his penis in her buttocks. That was, of course, changed to anus to meet the definition of the statute. And I think this is a critical, critical point. The defendant conceded and agreed to that change both in the factual basis and also in the information that was presented. So that factual change, coupled with the defendant's agreement, meets the statutory definition. The defendant left that plea agreement knowing, again, what the elements were and the judge satisfied that the elements and the facts married up with one another. Undoubtedly here, the judge, and I have it at page 22 and page 23 of my brief, went into detail about, wait a minute here, we have a buttocks versus anus distinction here in the statute. Mr. Schneider, are you clear about this? Again, stated again, the government stated again what the elements were and the need for the factual basis to include anus instead of contact with the buttocks. So going through that again with the defendant and his acquiescence, I understand, and after all of that, how is it that you're going to plead? I'm going to plead guilty, Your Honor. That supports a factual basis for this plea and it establishes that this plea was knowingly entered. Again, concede that there was some developments after that with different offenses and such. It stemmed again from the recantation, not from an issue with the facts. And as further evidence of that, the defendant had new counsel after this plea, filed a motion to withdraw his plea and didn't raise that as a ground. He raised as a ground an issue involving the guidelines, raised an issue that the victim recanted, so I'm completely innocent of anything, irrespective of what I had agreed to at the plea agreement, and then raised a third ground involving the waiver that was part of the plea agreement. He didn't knowingly make an appellate waiver in the plea agreement. So he didn't raise this issue in his motion to withdraw, and when he gets to sentencing, what does he say? Through counsel. Counsel says he admits what he did per the plea agreement, and the defendant apologizes for his actions. Nothing from him whatsoever at sentencing that I didn't commit this offense. I didn't commit the penis to anus offense contact. And over and above and beyond all of that, we still have the ability under the law, if the defendant maintains, well, I didn't have penetration here. I had penis to buttocks contact. We still have the ability here to allege and sustain a conviction on attempt. It was his attempt to have penis to anus contact, even though there may not have been penetration. So on multiple theories here, there is a factual basis. A review of the plea transcript ensures that there is a knowing entry of that plea, and finally, there simply is no error in this case. Once a factual basis and a knowing entry of that plea occurs, the court's review, I would respectfully request, is for error in this case. There is no error in this case, given that analysis. I'm happy to look like you have a question. Oh, I apologize. So if there aren't any other questions, I'd stand on my brief with respect to the other plain error analysis. All right. Thank you. Thank you. How much time does she have? Two minutes? May it please the Court. I'd like to talk first about the last plea was based on MS's recantation of her statements. That's a little wishy-washy to me because MS had recanted other statements that she had made for the 2009 conduct. She had gone back and forth on the 2011 conduct. Well, part of it's not in the record when the negotiations for the last plea agreement started, but she was recanting early on. And also the concept that there would be more serious charges filed, we acknowledge that that is a possibility because she, at one point, said that this abuse had started between her age of 8 and 9. However, her credibility is extremely low at this point, and it's questionable whether those most serious charges could be found by a jury if it goes to a jury trial. The government's asking the Court solely to look at the plea colloquy. That's just one of the totality of the circumstances this Court looks at through the five-factor test. The other things are the complexity of the charge, which I think is the end-all, be-all of this issue. The other two, his age and intelligence, are kind of equally weighed factors, but also the Court's colloquy, the timing of the colloquy between the beginning explaining the changes that were made. Mr. Schneider may have agreed to the changes that were made, but it's not entirely clear how he understood that affected the plea and that he understood that this change was essentially changing the manner in which he had violated a statute and taken to its furthest level between buttocks and anus would change his statutory maximum from 3 years to 15 years. It's not entirely clear that he understood that from the change of plea. And the last issue is the attempt issue, and obviously I see I'm out of time. I'll conclude my statement. The attempt issue, obviously attempt always can be proven as part of a charge, but in this case there are two statutes and one of them fits MS's statements about what happened, the touching of the buttocks with the penis, 2244, unless we infer that it's anus, and I think that inference is too thin in this case. We ask the Court to reverse and remand for further proceedings. Thank you. Thank you. And thank you, both counsel, for your fine arguments. We'll take the case under advisement.